MILLER *vs.* DELAMATER.

A *feme covert* may make a valid endorsement of a note, given to her before marriage, by a name different from that of her husband, if the circumstances of the case be such as to warrant the presumption that the endorsement was made with the assent of the husband.

Such endorsement will be valid, notwithstanding that by an ante-nuptial contract she had assigned the note to a *trustee* for her benefit; if the endorsement be made with the knowledge and assent of the trustee.

A tenant for life of real or personal estate is bound to account for the *principal* only; the *income* or *interest* belongs absolutely to such tenant, and may be appropriated or invested at pleasure.

THIS was an action of *assumpsit,* tried at the Greene circuit in October, 1831, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiff sued as the *endorsee* of a promissory note given by the defendant, dated 16th January, 1828, for $300, payable, with interest, on demand, to *Lyntia Harder* or order. The note was endorsed in blank by the payee, by writing her name (*Lyntia Harder*) on the back thereof. On the part of the defendant, it was shown that the endorsement was made by the payee *subsequent* to her intermarriage with one *John Moul* and whilst she was the wife of Moul; on which ground, he insisted that the plaintiff was not entitled to recover, as he could not derive title to the note by the endorsement of a *feme covert.* It was admitted that the suit was prosecuted in the name of the plaintiff for the benefit of *Mrs. Moul,* but the defendant insisted that the action could not be sustained by the plaintiff as the *trustee* of Mrs. Moul, because the money, the consideration of the note, belonged not to her, but to the residuary legatees named in the will of *Michael Harder,* her former husband. It appeared that Michael Harder, by his last will and testament, gave all 'his estate, real and personal, to his wife *Lyntia,* during her widowhood; and in case of her marriage again after his decease, he made other and different provision for her. The note in question was given while the payee was the widow of Michael Harder,

VOL. XII.                 55

ALBANY,
Oct. 1834.

Miller
v.
Delamater.

for money lent by her to the defendant, accrued out of the *income of the estate* given and devised to her by the will of her former husband.   In December, 1830, she intermarried with John Moul ; previous to the marriage, with him, to wit, on the 11th December, 1830, an *ante-nuptial contract* was entered into between her and Moul, and one *Jacob N. Harder*, as her trustee, whereby all the property, whereof she was then possessed in her own right, and among other property, *all notes for the payment of money* held by her, was and were assigned and transferred to Jacob N. Harder for her separate use, subject to such disposition as she should direct to be made of the same notwithstanding her coverture, and free from any control or disposal by her then intended husband.   The note, after the marriage, was in the possession of the trustee, to whom the defendant repeatedly paid the interest accruing upon it. The circuit judge ruled both objections to be untenable, and under his direction, the jury found a verdict for the plaintiff for the amount of the note and the interest thereof.   The defendant asks for a new trial.

*J. A. Spencer*, for the defendant, insisted, 1. That the endorsement of the note by the payee after her second marriage was void, and that consequently the plaintiff could derive no title under it ; and , in support of this position, cited 1 East, 432 ; 5 Wendell, 490 ; 5 id.  600 ; 2. That the payee, by her intermarriage with her second husband, lost all interest in the moneys secured by the note, and that the same belonged to the residuary legatees of her former husband, 2 Cruise, tit. Estate on Condition, § 60, 61 ; Strange, 1138; and 3. If the interest in the note did not pass to the residuary legatees, it being transferred to the trustee by the ante-nuptial contract, it was not in the power of the payee by her endorsement to vest a title to the note in the plaintiff, so as to entitle him to sustain the action.

*I. Gaul jun.* for the plaintiff, in answer to the first point made by the defendant, cited 11 Johns. R.  52 ; 2 Phil. Ev. 12, 28 ; 6 Esp. N. P. C. 43.   In answer to the second point, 2 Meriv. 192 ; 2 Dallas, 183 ; 2 Vesey, 501 ; 9 id. 549 ; 2 Mad-

Ch. 188 ; and to the third point, that the jury were warranted in presuming the assent of the *trustee* to the endorsement by the *payee*.

*By the Court,* SUTHERLAND, J.   There is no doubt of the general rule that the husband is entitled to all the personal property which belonged to his wife at the time of the marriage, or which she may acquire during coverture ; and it necessarily follows, that where that property consists of negotiable paper, payable to her or her order, it is, in legal effect, payable to her husband, and an effectual transfer by judgment can, as a general rule, be made only in his name.   1 Strang, 516.   3 Wils. 5.   10 Mod. 245.   2 Black. R. 1081.   4 T. R. 361.   3 Burr. 1776.   2 Maule & Selw. 393.   Chitty on Bills, 25, 149.

*Barlow* v. *Bishop*, 1 East, 432, 3 Esp. N. P. C. 266, was an action of assumpsit by the plaintiff as endorsee of a promissory note made by the defendant, payable to *Ann Parry*, and by her endorsed to the plaintiff.   It appeared in evidence that Ann Parry was a married woman, who carried on the business of a milliner at Birmingham, in her own name, with the consent of her husband ; that the consideration of the note was goods furnished to her by the plaintiff, who was a haberdasher in London ; that she had dealt with the plaintiff in her own name, and had given a note for the money in her own name ; that the plaintiff having pressed Mrs. Parry for payment, the defendant, with a view to serve Mrs. Parry, and with full knowledge of her being married, gave her the note in question, with a view that she should pay it over to the plaintiff, in order to stop his proceedings against her, which she did by endorsing it over to him.   The defence was, that the plaintiff made title through Ann Parry, who was a married woman, and who for that reason, could not endorse the note ; that the moment it was given, it became the property of the husband, and could be transferred by him alone. Lord Kenyon, before whom the cause was tried, sustained the objection, and held that the plaintiff should have declared on the note, according to its legal effect, that is, as a note payable to the husband ; and if it had appeared that the husband had allowed the wife to endorse bills and notes on his ac-

count, the plaintiff might then have recovered upon the wife's endorsement. Upon a motion for a new trial, 1 East, 434, Lord Kenyon, who delivered the opinion of the court, remarked, that it was clear that the delivery of the note to the wife vested the interest in her husband; but as he permitted her to carry on trade in her own name, and this was a transaction in the course of that trade, if she had endorsed the note *in the name of her husband,* the jury might have presumed an authority from her husband for that purpose; but as the endorsement was *in her own name,* it was impossible that she could pass the interest of her husband by it. A new trial was denied. This decision, it will be observed, proceeds upon the ground that the husband had a beneficial interest in the note; that it became his property the moment it was delivered to his wife; and upon that assumption, the wife undoubtedly could not transfer it by endorsement, without either the express or implied authority of the husband; but if (as it would appear from the statement of the case) the note was made by the defendant for the accommodation of the wife, without any consideration, and for the specific purpose of being endorsed by the wife to the plaintiff, it was not a valid and effectual instrument while it remained in the hands of the wife or husband, and it could not legally have been used by either of them for any other purpose than that for which it was made, and to which it was applied. It appears to me, therefore, with great deference and respect, that it might well have been held that the jury, under the circumstances of the case, might have presumed an authority from the husband to the wife to take and endorse the note in the name by which she carried on her business.

*Coles* v. *Davis*, 1 Campb. 485, was an action by an endorsee against the maker of a promissory note. The note was made payable to *Mrs. Carter or order,* and was endorsed by her to the plaintiff, for a valuable consideration, by the name of *M. Carter.* It was proved that Mrs. Carter was the wife of a man by the name of Cole, who was still living, but passed in the world by the name of *Mrs. Carter.* It likewise appeared that the defendant had asked for indulgence, and had promised to pay the note. *Garrow,* for the defendant, contend-

ALBANY,
Oct. 1834.

Miller
v.
Delamater·

ed that no title to a bill of exchange or promissory note could be made through the endorsement of a feme covert; and that what the defenant said after the bill became due was immaterial, if he was not previously liable. Lord Ellenborough held that the plaintiff was entitled to recover. He remarked that a husband may authorize his wife to endorse bills of exchange or promissory notes as his agent; that such authority might be presumed; and that it might farther be presumed, that the husband authorized her to endorse notes in the name by which she passed in the world. It is true that Lord Ellenborough seemed to attach considerable importance to the subsequent promise of the defendant to pay the note. This case, however, establishes the principle, that a married woman may make a valid endorsement of a note, by a name different from that of her husband, and that an authority so to endorse may be presumed from all the circumstances of the case.

In *Leicester* v. *Biggs*, 1 Taunt. 367, it was held that where a feme covert had for many years been separated from her husband, and during that time had received for her separate use the rent of her own property, which accrued to her by devise after the separation, she shall be presumed to have received the rent and to have acknowleged the tenancy, by her husband's authority; and the husband was nonsuited in an action of ejectment against the tenant on that ground.

No case certainly can exist, in which the circumstances would justify a stronger presumption of authority from the husband to the wife to endorse a note in her own name, than the one at bar. The note was the separate property of the wife before her marriage; subject to her exclusive control by virtue of an ante-nuptial contract, in which the husband had expressly renounced all interest in and authority over the property of his wife, and had united in an instrument which transferred it all to a trustee for her exclusive benefit. He has no beneficial interest whatever in the note, and no right in any manner to interfere with it. He can never become responsible in consequence of this endorsement. The suit is brought for the benefit of the wife; the endorsement having been made merely for the purpose of bringing the action in the name of the plaintiff. The objection, therefore, is a matter of

ALBANY,
Oct. 1834.

Miller
v.
Delamater.

form only, and ought not to be permitted to defeat this action. If it is necessary to support the endorsement, it may well be presumed that the payee, in making it in her own name, acted by the express authority of her husband. The wife may be the agent of the husband for this or any other lawful purpose. *Church* v. *Landers,* 10 Wendell, 792, *and cases there cited.* The nonsuit on this ground was properly refused.

The trustee of Mrs. Hardner might probably have recovered this note as assignee under his trust deed. But that assignment creates no legal objection to an endorsement made by her with the knowledge and assent of her trustee ; and such assent abundantly appears in this case.

Did Mrs. Harder forfeit her right to the note and the money for which it was given, by her second marriage ? It is admitted to have been saved by her from the income or interest of the real and personal estate given to her for life, and not to have been any portion of the principal. It was separated from the mass of the estate, and a new and distinct security taken for it to herself. A tenant for life of real or personal estate, is bound to account for the *principal* only. The *income* or *interest* is absolutely his, and he may appropriate or invest it as he pleases. *Lord Douglass* v. *Chalmers,* 2 Ves. 501. *Fearne* v. *Young,* 3 id. 549, 552, 3. 2 Dall. 183. 2 Meriv. 192. The judge was therefore right in refusing to nonsuit the plaintiff on this ground also; and the motion for a new trial must be denied.