## ROLAND *vs.* LOGAN, Ex'r.

1. A married woman may, with the assent of her husband, endorse a bill or note payable to her, in her own name, and confer a valid title on her endorsee; and such assent may be presumed from circumstances.

2. If a husband permits his wife to take her children to a foreign country, or to another State, of which he never becomes a resident, and there enter into business for their support and maintenance, and by her industry, she acquires rights and property, to which during his life he has asserted no claim, his assent, that she should act as a *feme sole*, and as such, receive payment of debts contracted with and due to her, and endorse bills or notes acquired by her, in her own name, may be fairly and reasonably presumed.

3. A married woman, who, having separated from her husband in another State, has come to this State, and by her industry has for several years maintained herself and her children, the husband in the meantime continuing to reside in the State whence she came, and asserting no claim to her acquisitions, is to be regarded as a *feme sole*, and may by endorsement in her own name pass the title to a bill or note made payable to her.

4. A plea in bar is sufficiently certain, if it *prima facie* shows a bar to the action as stated in the declaration, and if there exists any other fact or circumstance, not shown by the declaration or plea, that will avoid the bar, it should be replied.

5. The provision in the statute of limitations, which authorises a plaintiff to commence a new action within a year after the reversal of a judgment in his favor, &c., notwithstanding the time specified as a bar has elapsed during the pendency of the suit, will not authorise the institution of an action at law, under similar circumstances, after the dismissal of a bill in chancery touching the same subject matter. The statute has no application to a case of that sort.

ERROR to the Circuit Court of Benton. Tried before the Hon. Thomas A. Walker.

THIS was an action of assumpsit, instituted on the 16th Oct. 1847, by the defendant in error, as executor of Thos. A. Powell, deceased, against the plaintiff in error, to recover the amount of a promissory note for $2500, dated, Benton county, Ala., 26th Dec. 1840, and payable one day after date, to Mildred Hogue, by whom it was endorsed to said Powell. The declaration is in the usual form on the note and the endorsement thereof, with the money counts added. Among other pleas the defendant plead-

ed, first, non-assumpsit; secondly, the coverture of the payee at and before the date of said note and her endorsement thereof; thirdly, the statute of limitations of six years; fourthly, *ne un-ques executor*, &c. There was a demurrer to the second plea, which was sustained by the court. To the third plea the plaintiff filed three replications; first, a subsequent promise; secondly, that the plaintiff filed his bill in the Chancery Court of Benton against the defendant and Mildred Hogue, upon the several causes of action mentioned in the declaration; that at a term of said Chancery Court, held on the — day of — 1846, a decree was rendered in his favor against the said defendant, which decree was afterwards at a term of the Supreme Court, in the year 1847, on writ of error, reversed, and the bill dismissed; and that this suit was instituted within one year from the date of said judgment rendered by the Supreme Court, &c.; thirdly, that the note in fact was made in 1842, and not in 1840, the year in which it purports to have been dated. The defendant took issue on the first and third replications to the third plea, and rejoined to the second replication, "that the proceeding of said Chancery Court, mentioned in said second replication, is not one of the cases specified in the section, numbered 86, found on page 328 of Clay's Digest of the Laws of Alabama, nor was there ever any verdict rendered in favor of said plaintiff in the said proceeding of said Chancery Court." There was a demurrer to this rejoinder, and the court sustained the demurrer.

The facts of the case, as presented by the bill of exceptions, so far as they are necessary for a correct understanding of the questions decided, may be thus stated. Mildred Hogue, the payee of the note, was, for many years prior to 1837, the wife of Jesse Hogue, and resided with him as his wife, in the State of Georgia. In that year she left him, and came to Alabama with her children, where she and they have resided ever since. From 1837 to 1840, she kept a boarding-house, then lived two years in the family of the defendant, and afterwards upon a farm, which she managed for herself. Jesse Hogue continued to reside in the State of Georgia, where he died in March 1847, without having asserted any claim to the note sued on or to any of the acquisitions of the said Mildred. Since the commencement of this suit, the said Mildred has intermarried with the defendant in error. There were several questions raised on the admission of

testimony, which, as they are not decided, it is unnecessary to notice. The court charged the jury, first, that if they believed from the evidence that Mildred Hogue had been abandoned by her husband for several years prior to the execution of the note; that during this time she acted for herself, and resided in this State, and he in the State of Georgia; that they continued to live separate and apart up to the death of Jesse Hogue, in March 1847; and that he never did assert any right to the note in his life-time, the said Mildred might well act for herself, so far as to take a note payable to herself and endorse it to the plaintiff. Secondly, that if they believed from the evidence that Mildred Hogue, the payee of the note, had for several years been living separate and apart from her husband, acting for herself, he residing in Georgia, and she in this State, and the defendant obtained from her money or property for which the note was given, she would in law be presumed to be the meritorious cause of action, and if they further believed that her husband never asserted his marital rights to the note in any way, and died before the commencement of this suit, the note would survive to her and she might endorse it to the plaintiff.

The defendant asked the court to charge the jury that a note made payable to a married woman cannot be endorsed by her alone during the coverture, so as to enable her endorsee to maintain an action on it in his own name. This charge the court gave as the general rule of law, but instructed the jury that there were exceptions, and that if they believed from the evidence that Jesse Hogue had abandoned his wife, or by cruel treatment had caused her to abandon him; that she was living in this State, acting for herself, when the note was made, and had been so living for several years, and that the said Jesse Hogue continued to live in Georgia, where he died, without ever having asserted a claim to the note, this would form an exception to the rule.

To the several rulings of the court in respect to the pleadings, and to the charges given, and the qualification of the charge asked, the defendant excepted, and now assigns them as error.

RICE, for the plaintiff in error.

WHITE & PARSONS, for the defendant.

DARGAN, C. J.—This action is founded on a promissory note made by the defendant, payable to Mildred Hogue, who endorsed it to the plaintiff's testator. The evidence showed that Mildred Hogue, the payee, at the time the note was executed, and also, at the time of the endorsement thereof, was a married woman, and that she and her husband lived together in the State of Georgia, until about twelve years ago, when she removed with her children to this. Sate, where she has resided ever since. For some time, she kept a boarding-house, and afterwards managed a small farm for herself, and her children. Jesse Hogue, her husband, never came to Alabama, but remained in Georgia, where he died in the year 1847, never having asserted any title or claim to the note. The testimony also tended to prove that the defendant promised to pay the endorsee, after he had acquired the note. These are the material facts. out of which grows the question, whether the endorsement of the note by Mildred Hogue gave to her endorsee a title that would enable him to maintain a suit upon the note in his own name.

The general rule of law undoubtedly is, that if a bill or note be made payable to a married woman, whose husband is under no civil disability or incapacity, it is by operation of law payable to the husband, and he may endorse, or negotiate it, or sue upon it in his own name; for the legal existence of the wife being suspended during the coverture, or rather incorporated into that of her husband, a promise to her during coverture is a promise directly to the husband.—Commonwealth v. Manly et al., 12 Pick. 173; Jones v. Warren's Adm'r., 4 Dana 333; Story on Bills, §92. This is the general rule, but it is subject to several exceptions, which are founded upon reason and justice. Thus for example, if the husband has abjured the realm, or if he is banished from his country, the capacity of his wife to contract is restored. So, too, it is well settled, that if a bill or note be made payable to a married woman, although the title to it vests in the husband, if he sees fit to assert it, yet he may allow her to endorse it in her own name, and if he assents to her endorsement of it, (which may be presumed from circumstances as well as expressly proved) her endorsee acquires a good title, not only as against the husband, but also against the parties to the bill. In the case of Cates v. Davis, 1 Campb. 485, the action was on a note payable

to Mrs. Carter, and by her endorsed to the plaintiff. It appeared on the trial that Mrs. Carter was the wife of one Cole, who was still living, but that she passed in the world as Mrs. Carter. It was also shown that the plaintiff had paid a valuable consideration for it, and when the note fell due, the defendant had asked for indulgence and had promised to pay it. Lord Ellenborough said that a husband may authorise his wife to endorse bills of exchange and promissory notes as his agent, and it may be presumed that he authorised her to endorse them in the name by which she was known to the world. In the case of Prestwick v. Marshall, 7 Bing. 565, a bill of exchange was drawn and endorsed by a married woman in her name with the husband's consent, and it was held that her endorsee could recover. Again in the case of Miller v. Delamater, 12 Wend. 433, a note was made payable to a *feme dum sola*, and she endorsed it after her marriage in her own name, under circumstances that warranted the presumption that it was done with the husband's consent. The Supreme Court of New York held that her endorsee was entitled to recover. Judge Story in his treatise on bills, after stating the general rule that a bill payable to a married woman is payable to her husband, says, "and he may at his election endorse, or negotiate it, or sue on it in his own name, or jointly in the name of himself and his wife; or he may allow her to endorse or negotiate it in her own name, and in this case, it may be declared on as a bill endorsed by the husband, or by the wife with his consent, and thus a good title will be shown against the husband, as well as the other parties to the bill."—§ 92. These authorities fully satisfy my mind that a bill or note payable to a married woman may be endorsed by her in her own name with the assent of her husband, and her endorsee will acquire a valid title ; and this assent of the husband may be presumed from circumstances, as well as expressly proved ; and I should hold that the circumstances under which this note was made and endorsed would fully justify the jury in coming to the conclusion that the husband assented to the endorsement. It is true, there was no evidence that he ever knew of the existence of the note; but if a husband permits his wife to take her children to a foreign country, or to another State, and there enter into business for their support and maintenance, and by her industry she acquires rights and property to which he never asserted

any title during his life, nor ever came to the country where she had located, it must be presumed that he intended that she should contract in reference to property as a *feme sole*, and as such, might receive payment of debts contracted with and due to her, and endorse bills or notes which she had acquired; and thus his assent to the endorsement of the note in question might be fairly and reasonably infered.

But there is still another exception to the general rule that a note or bill payable to a married woman is payable to the husband, under which the plaintiff's testator acquired a valid title to the note. In the case of Gregory v. Paul, 15 Mass. 31, it appeared that the plaintiff was a married woman; that she and her husband were British subjects; that her husband never had been a resident of Massachusetts, but that the plaintiff had been abandoned by her husband, and for the last five years had resided in that State, and maintained herself as a single woman. The court held that she was entitled to recover. So, in the case of Phebe Abbott v. Bailey, 6 Pick. 89, it appeared that the plaintiff was a married woman; that she and her husband resided in New Hampshire together, until, by his cruelty, he drove her off; and that she then came to Massachusetts and supported herself, her husband still being a resident of New Hampshire. The court held that New Hampshire and Massachusetts must be considered as governments foreign to each other in determining whether the plaintiff could maintain the action, and on the ground that the husband had never been a resident of Massachusetts from the time the plaintiff became such, allowed a recovery. Judge Story also says, that a married woman, resident in any country, whose husband is an alien and never has been in that country, is restored to her capacity to contract.—Story on Bills, § 91. It is true, that in the cases cited from Massachusetts, it appeared in the one, that the husband abandoned the wife, and in the other that he drove her off without the means of support, whilst the record before us does not show the reason why Mrs. Hogue and her husband separated. But we would not presume the fault to be hers for the purpose of defeating this action. Her conduct, so far as we are informed by the proof, has been unexceptionable since she has been a resident of this State, and by her industry she has maintained herself and her children. To deny to a married woman, thus situated, the capacity to contract

Roland v. Logan, ex'r.

might deprive her of the means of living, and thus bring about her ruin. I think it clear that, as her husband was never a resident of this State, and never asserted, during his life, any right to the note, the endorsement of Mrs. Hogue gave to the plaintiff's testator a valid title, and that the suit may be maintained by the plaintiff for its recovery. This view shows that the instructions of the court were substantially correct.

We now propose to examine the questions growing out of the pleading. The second plea avers simply that at the time of the making of the note, and the endorsement of it by Mildred Hogue, she was a married woman. To this plea there was a demurrer and the demurrer was sustained. We think the court erred in sustaining the demurrer. The declaration does not allege the endorsement was made by Mrs. Hogue, with the consent of her husband, and the question presented by the pleadings is simply whether a married woman can endorse in her own name a bill or note payable to her after the marriage. As a general rule she clearly cannot, but she may, under certain circumstances that form an exception to the rule. We think that instead of demurring to the plea, the plaintiff should have replied the facts that gave validity to her endorsement. We do not understand that a plea in bar must be of such degree of certainty as to preclude a conclusion otherwise, but it is sufficient if *prima facie* it shows a bar to the action as stated in the declaration, and if there exists any other fact or circumstance, not shown by the declaration or plea, which would avoid the bar, it should be replied. We would not, however, reverse the judgment for this error, for the defendant has had the full benefit of this defence under the general issue.—Barron v. Vandvest, adm'r., 13 Ala. 232.

The third plea of the defendant was the statute of limitations of six years. To this plea, there are three replications: First, a subsequent promise; secondly, that the plaintiff filed his bill in equity against the defendant upon the several causes of action mentioned in the declaration, and a decree was rendered in his favor by the Chancellor, in the year 1846, but that this decree was reversed, and the bill dismissed by the Supreme Court in 1847, and that this suit was commenced within a year from the time the bill was dismissed by the Supreme Court. The third replication is, that the note in fact was made in 1842, and not in 1840, the time it purports to bear date. The defendant took

Roland v. Logan, ex'r.

issue on the first and third replications, and rejoined to the second. The plaintiff demurred to this rejoinder, and thus the sufficiency of the second replication to the third plea is presented for consideration. It is provided that if judgment, in any of the several actions named in the act of limitations, be given for the plaintiff and the same is reversed by the writ of error, or if verdict is rendered in his favor, and the judgment is arrested and rendered against him, then the plaintiff, his heirs, executors, or administrators, may commence a new action within one year from the time such judgment shall be rendered against the plaintiff.—Clay's Dig. 328. When a suit at law is pending, another suit for the same cause of action cannot be instituted by the plaintiff; and a if second suit is improperly commenced, it may be abated. Hence if judgment be rendered against a plaintiff for a defect of form, not touching the merits, he would be without remedy if the statute had perfected the bar during the pendency of the first suit. To remedy this defect, the act refered to was passed. It contemplates the bringing of another suit within a year after a judgment in a suit at law, for the same cause of action, had been rendered against the plaintiff, but not upon its merits. It is very clear that it does not authorise the bringing of suit at law, within a year after a bill in equity is dismissed, because the bill was filed to recover the same subject matter. The court erred, therefore, in sustaining the plaintiff's demurrer to the defendant's rejoinder to the second replication to the third plea, and for this error we are compelled to reverse the judgment.

It is not necessary, we think, to examine the other questions growing out of the assignment of errors, for the view we have taken of the merits of this case will enable the parties to try the cause according to law, and in the meantime the certificate of the presiding magistrate of Habersham county, Georgia, can be corrected so as to conform to the act of Congress. Let the judgment be reversed, and the cause remanded.

CHILTON, J., not sitting.