YEATMAN, SHIELDS & CO. *vs.* HONORA BELLMAIN & others.

April Term, 1874.

FEME COVERT—CONTRACTS.—The general rule is that a married woman is incapable of binding herself by contract, and a negotiable security given by her is void.

SAME.—But where a married woman has lived for years in this state, separate and apart from her husband who has lived in another state, and has carried on business as a *feme sole*, contracting and being contracted with, suing and being sued, and has incurred a debt for goods necessary to the business she is engaged in, neither a note given for such goods, nor a judgment recovered thereon at law, is void, and satisfaction of the latter may be enforced in equity.

*G. P. Thruston*, for complainants.
*Shackelford & Helms*, for defendants.

· THE CHANCELLOR :—The complainants recovered a judgment at law against the defendant, Honora Bellmain, on the 10th of March, 1871, for $261.50, on which execution issued and was returned *nulla bona*.   This bill was filed on the 3rd of May, 1871, against the said Honora as a non-resident of the state, and one Nelson Walker, to attach and subject to the satisfaction of complainants' debt, so much of the indebtedness of Walker to his co-defendant as might be necessary, which indebtedness was created by the sale to him of a lot of ground in Nashville.

The facts stated in the bill are all admitted by the answer, and the only defense set up is that the defendant, at the time the judgment was rendered, and at the time the note was given by her on which the judgment is based, was a *feme covert*.   The note was executed on the 20th of February, 1870, for goods bought by defendant from complainants to supply a small store or millinery establishment carried on by defendant in her own name.

The evidence shows that the defendant has been carrying on business in her own name since the year 1858, with some intervals, in Nashville.   In her own deposition she states that she did business in Nashville, Tenn., during the years 1860 and 1861, and from the latter part of the years 1862 till 1866 or 1867, also during the year 1869 and 1870, and perhaps part of 1868.   She went to Kansas in 1870, and has been doing business since in that state, the complainants having sent her goods on her individual order.   The evidence also shows that she is a married woman, her husband being a man of dissipated habits, who never provided for his family, or had anything to do with the business carried on by his wife.   The husband lived with his wife at her place of business, as she says, until during the war, when he was kept for some time at Atlanta, Ga., and could not return home until Sherman took Atlanta.   He was then at home until 1866 or 1867, when he returned to Atlanta at her request, she shortly following him.   She came back to Nashville in 1867 or 1868, leaving her husband in Georgia, and

they have not lived together since.    He seems to have come to Chattanooga in 1868 or 1869, and at his request, she went to see him at that place in 1871.    He afterwards went to Meridian, in Miss., where he appears to be at this time.    She states in her deposition that he has never deserted or abandoned her, or she him, but this statement is rather the expression of an opinion than the statement of a fact.    She admits that she complained to everybody, and particularly to one of the complainants, of her husband's dissipated habits, and that he never half provided for his family.    She has both sued and been sued alone in the last few years, and the suits prosecuted to judgment.    The question for the court, upon this state of facts, is whether the defendant is liable upon the contract made by her and can be sued alone, and is one by no means free from difficulty.

The general principle of the common law, repeatedly recognized by our Supreme Court, undoubtedly is that a *feme covert* is incapable of binding herself by contract, and that a negotiable security given by her is absolutely void.    *Sheppard* v. *Kindle*, 3 Hum. 80 ; Pars. on Cont. 360.    But it was an ancient, and necessary, exception to the general rule of the wife's disability to contract, that if the husband had been banished or abjured the realm, she would be capable to contract, and to sue and be sued as a *feme sole*.    The reason was, that, in such case, both she and her creditors would be remediless without the exception.    Co. Litt. 132 *b*, 133 *a* ; *Deerly* v. *Duchess of Mazarine*, 1 Ld. Ray. 147. So, where the husband is a foreigner and has voluntarily abandoned his wife, and resides abroad, it was held to be for her benefit that she should be liable, in order to enable her to obtain credit, and secure a livelihood.    *De Gallien* v. *L'Aigle*, 1 Bos. & Pull. 357.    If, said Lord Kenyon, the wife was not to be chargeable for debts contracted under such circumstances, she would be without credit, and might starve.    *Walford* v. *Duchess of Pienne*, 2 Esp., N. P., 554. The American authorities have sustained this exception of the common law, and extended it to cases not covered by the English decisions.

As early as the first edition of his Commentaries, Ch. Kent, in commenting upon the English cases, said : " It is probable that the distinction between husbands who are aliens, and who are not aliens, cannot long be maintained in practice, because there is no solid foundation in principle for the distinction." The notes to later editions of these Commentaries, 2 Kent, 157, show that this prediction has been verified. In *Bean* v. *Morgan*, 4 McC. 148, it was held that if the husband departs from the state with the intent to reside abroad, and without the intention of returning, his wife becomes competent to contract, and to sue and be sued as a *feme sole*. In *Gregory* v. *Paul*, 15 Mass. 31, the decision was that if the wife be driven by cruelty from her husband's house, and she retires to another state, and maintains herself without any provision made for her by her husband, she may sue as a *feme sole,* though her husband be a citizen. And the authorities are numerous that where the wife has been absolutely deserted by the husband for a long time, and left wholly to her own means of support, she may sue and be sued. *Wagg's Exr.* v. *Gibbons*, 5 Ohio, N. S., 580 ; *Smith* v. *Libera*, 4 Iowa, 321 ; *Rose* v. *Bates*, 12 Mass. 30 ; *Roland* v. *Logan*, 18 Ala. 307 ; *Love* v. *Maynehan*, 16 Ill. 277 ; *Gregory* v. *Pearce*, 4 Met. 478.

" The distinction," says the Supreme Court of the United States, "between an alien and subject, seems to have proceeded on the supposition that in the case of the latter there might be an *animus revertendi*, but the later cases have judiciously neglected such a distinction, and it is now well settled, at least in this country, that where the wife has been left by the husband, has traded as a *feme sole*, and has obtained credit as such, she is liable for her debts." *Rhea* v. *Rhenner*, 1 Pet. 105.

The American editor to the late edition of Smith on Contracts, p. 237, thus sums np the result of the authorities : " The law seems to be settled that when the wife is left without maintenance or support by the husband, has traded as a *feme sole*, and obtained credit as such, she ought to be

liable for her debts. And the law is the same whether the husband is banished for his crimes, or voluntarily abandons the wife. It is for the benefit of the *feme covert* that she should be answerable for her debts, and liable to an action in such cases, otherwise she could not obtain credit, and would have no means of gaining a livelihood." For which he cites a number of cases. And see to the same effect, 1 Pars. on Contr. 367, note.

A decision was made by our Supreme Court in accord with these rulings, shortly before the war, in the case of *Birdwell* v. *Hall*, the opinion in which was prepared by Judge KcKinney, and should have been published in 2 Head, but, for some reason, was not. Certain it is that our legislation is in this direction. Code, 2486, 2805. The provisions of the latter section are : " Where a husband has deserted his family, the wife may prosecute or defend in his name, any action which he might have prosecuted or defended ; she may also sue and be sued in her own name for any cause of action accruing subsequently to such desertion."

The facts of this case bring it within the spirit of these decisions and this legislation. Neither the husband nor wife may choose to characterize what has occurred as abandonment or desertion, but the fact is that they have separated and lived apart for years, he in another state, and she in this state. During this period, and for years before, she had carried on business in her own name, contracting and being contracted with, suing and being sued as a *feme sole*. She admits that the debt in controversy was justly contracted by her for goods furnished by the complainants to enable her to carry on the business by which she supported her family. She admits that she was notified of the suit and made no defense to the recovery of judgment. Neither the judgment nor the note is necessarily void. The burden of proof is upon her, under the circumstances shown by the testimony, to satisfy the court that it would be inequitable to enforce the judgment. Her assertions and opinions as brought out in her deposition, if assumed to be true to the

letter, might suffice to shield her, but her facts do not, and it is the duty of the court to decide according to the facts.

No serious effort has been made in argument to resist the subjection of the property attached, to the satisfaction of the complainants' debt, if the debt were sustained. Perhaps none could be. The terms of the deed to Coltart might, it is true, leave the extent of the defendant's interest open to discussion. But that she has an interest in the land and the proceeds of sale sufficient to cover complainants' debt, seems certain. Moreover, she has been permitted to sell the land and dispose of the proceeds at her pleasure, neither the trustee nor defendant's daughter setting up any claim.

The complainants will, therefore, take a decree for their debt and costs. But inasmuch as the defendant seems entitled to some credits, there will be a reference to the master to ascertain and report the amount of such credits.