*Lapham & Rockwood,* for appellants.
*Browne & Van Slyck,* for appellee.

—————

## BURRILL MATTESON *vs.* SARAH C. DEDERKEY.

Gen. Stat. R. I. cap. 151, § 1, provides that a married woman living in the State without her husband, under certain conditions and in certain circumstances, may be sued as a *feme sole:* § 5 provides that "if the husband of any such woman shall afterwards come into this State and claim his marital rights, his arrival here shall have the same effect, with regard to any suit then pending in which she is a party, except to abate the same . . . . as if they had been first married at the time of his arrival here: " . . . .

*Held,* that under this statute a pending suit against the wife abated immediately on the husband's arrival, if such arrival was coupled with a *bonâ fide* claim of his marital rights.

PLAINTIFF'S petition for a new trial.

Assumpsit. Plea in abatement, coverture. Replication, that the defendant had lived in this State without her husband for more than a year before she made the promises sued on. Rejoinder traversing the replication, and alleging that the defendant's husband came into this State and claimed his marital rights before the action was brought. Issue to the country and *similiter.*

The jury found that the defendant did live in the State for a year before making the promises sued on, and without her husband, but that the husband came into this State and claimed his marital rights, and lived with the defendant before the date of the writ in this action.

At the trial before the jury, the plaintiff requested the presiding judge to charge :

1. If the defendant by her conversation and acts led the plaintiff to suppose that she was not living with her husband, she was estopped from setting up this defence.

2. The husband's " living with her " must be a *bonâ fide* residence, assuming on his part all the marital relations, liabilities, and duties.

3. The simple fact that the husband was here in this State temporarily with his wife, would not constitute such a " living with her " as to bar or abate the plaintiff's claim against her.

4. The " living with his wife," and claiming his marital relations, must be so public and notorious that the plaintiff must be presumed to have knowledge of the fact.

These requests were refused, except so far as the substance of them is contained in the charge given, which was substantially :

That " the fact of the husband coming into this State and being with his wife for a day, or even for one night, would not be sufficient to bring the case under the statute ; but that if he was here three or four days, in and out, living with his wife as a husband usually lives with his wife, it would be sufficient to bring the " living " under the law, and that it is not sufficient that the husband simply should claim his marital rights, but he must actually resume them."

To the refusal to charge as requested, and to the charge given, the plaintiff excepted.

The questions at issue arose' under Gen. Stat. R. I. cap. 151, §§ 1, 4, 5.

*February* 16, 1878. STINESS, J. The first exception is overruled, for the reason that nothing is brought before us in the record or report of testimony to which the request refused would be applicable. The other exceptions involve the meaning of the words in Gen. Stat. R. I. cap. 151, § 5 : " If the husband of any such woman shall afterwards come into this State and claim his marital rights."

At common law the general rule is, that no suit can be maintained against a married woman alone ; upon plea of coverture, such suit must abate. The exceptions to this rule are those cases

in which the husband is *civiliter mortuus*, or an alien always living abroad.   1 Chitty Plead. *58 ; 2 Kent Comm. *154.

In this country it has been held that a husband who has never lived with his wife in the State where the suit is brought is to be treated as an alien.   *Abbot* v. *Bayley*, 6 Pick. 89 ; *Roland* v. *Logan*, 18 Ala. 307.

Our own statute recognizes this doctrine, with the limitation, that the wife must be here one year before she can be treated as a *feme sole*, and combines with it the provision that the return of the husband claiming his marital rights shall have no other effect upon any pending contract, nor upon any suit except to abate it, than as if they had been first married at the time of his arrival here.   In other words, the wife's contracts, made before the arrival of the husband, are to be treated like her contracts *dum sola ;* but the arrival of the husband, together with a claim of his marital rights, shall abate a suit to which he is not a party.

There is no specified period during which the husband must remain here, in order to work an abatement of the suit: on the contrary, the term used in the statute is " arrival," which seems to exclude the requirement of being or remaining here for a definite time.   Nor does the statute require the husband to do more than to " claim " his marital rights ; it does not say " he must actually resume them.   Of course it must appear that his " claim " is *bonâ fide*, with the intention on his part to assert his marital rights and assume the corresponding duties.

The instructions given to the jury were, therefore, more favorable to the plaintiff than the words of the statute.

The plaintiff, however, contends that it would be unreasonable to give to these words their apparent import, and that, for example, to say that if a husband should come into this State and stay " but one night," a suit must abate ; and hence he argues that the court should construe the statute to mean that, at least, he must be here a reasonable time.

To do this would introduce an element into the statute which the legislature has not put there ; and upon this point the English and American rules are uniform.

" We are bound," says Mr. Justice Buller in a early case in the King's Bench, " to take the act of parliament as they have

made it ; a *casus omissus* can in no case be supplied by a court of law ; for that would be to make laws." *Jones* v. *Smart,* 1 Term. Rep. 44.

In the United States Supreme Court, in *McIver* v. *Ragan,* 2 Wheat. 25, Chief Justice Marshall says : " Whenever the situation of a party was such as in the opinion of the legislature to furnish a motive for excepting him from the operation of the law, the legislature has made the exception. It would be going far for this court to add to those exceptions."

So in *Commonwealth* v. *Kimball,* 24 Pick. 366, 370, Chief Justice Shaw says : " The decisive answer is that the legislature has made no such exception. If the law is more restricted in its present form than the legislature intended, it must be regulated by legislative action." Sedgwick Statut. & Constit. Law, 263.

The plaintiff also contends that the coming of the husband into this State should be so open, notorious, and public, and continued for such a length of time, as to raise a presumption that the plaintiff knew, or by the use of reasonable diligence might have known it; and refers us, by way of analogy, to the rule under the statute of limitations.

There is, however, a wide difference between the two cases, and they rest upon very dissimilar principles.

The plea of the statute of limitations is in bar of the remedy ; of coverture, in abatement simply.

The principle upon which the statute of limitations rests is a presumption of payment in long-deferred claims.

But it is a presumption that may be rebutted ; as by a new promise, or inability to sue, where the debtor is without the jurisdiction, &c. His return to the jurisdiction, therefore, in such a manner that the creditor does not know, and cannot be presumed to know of it, is not inconsistent with the creditor's inability to sue, and does not refute that answer to the presumption of payment.

The doctrine of coverture is founded upon the Scriptural and social theory that the husband and wife are one, and that he has the right to her society and the power to direct her. Her lack of independence is compensated by freedom from responsibility to the extent that she can only be held liable, either civilly

or criminally, when she is free from the presumed direction, restraint, and control of the husband. The cases which establish the right of the wife to act independently of the husband proceed upon this principle. *Gregory* v. *Paul*, 15 Mass. 31; *Love et al.* v. *Moynehan*, 16 Ill. 277; *Marshall* v. *Rutton*, 8 Term Rep. 545; *Robinson* v. *Reynolds et ux.* 1 Aik. 174.

When, therefore, the husband appears to claim his marital rights, the wife is no longer free from his direction and control, the reason for the exception no longer exists, and the general rule applies, except so far as it is modified by the statute. What, then, would be the marital rights and duties of the husband if they were then first married? Evidently to be joined in an action upon any contract made by her; to assume and direct the defence of the same, and to protect his wife by satisfying, if possible, any judgment that may be obtained. He would not be bound to notify the creditors of his wife, nor to contract the marriage in such a manner to bring it to their attention.

Hence, it is clear that the return of a debtor under the statute of limitation must be such as to confirm the presumption of payment; the return of a husband must be such a return as to bring the wife under his legal direction and control. In the former case the return must be such as to affect the creditor; in the latter, such as to affect the wife. The first requires a return so open and public as to be brought or presumed to be brought to the knowledge of the creditor; the latter is accomplished immediately by the act of the husband.

This statute, then, operates as soon as the husband comes within this State in such a way as to bring the wife under his legal direction and control; *i. e.* by claiming his marital rights. Having done this, the control of the husband is presumed to continue until a different state of facts appear, sufficient to bring the wife within the exceptions to the general rule as to married women, and to enable her to act as a *feme sole*. Nor is this any more unreasonable than the well settled rule with reference to actions upon the wife's contracts made before marriage.

Suppose a man and woman are married and live together " but a single night," could it be claimed that she could not plead coverture, if she should be sued alone; even though the creditor did not know, and could not be presumed to know, of the marriage?

While this construction of the statute is in harmony with well settled doctrine, it carries with it no hardship to the plaintiff; for by the statute he still has a remedy in another action in which the husband and wife shall be joined, and without it he would have no other, if any, remedy.

But still the plaintiff urges that the husband, under this construction, may appear long enough to abate this suit, and then depart so as to evade service in another.

Perhaps it might be better if the act should require a specified residence of the husband within this State, or provide that he may be summoned in to defend the pending suit; but our province is to interpret the law and not to make it. If the law is plain, we have simply to administer it; and in this case we think both the policy and language of the statute are too clear to admit of the construction for which the plaintiff contends.

- *Petition dismissed.*

*Dexter B. Potter*, for plaintiff.
*Nicholas Van Slyck*, for defendant.